**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES NASH,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:12-cv-00694-AWI-SMS<br><br>**FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS** |

On April 30, 2012, Plaintiff brought this action challenging the Commissioner's final decision denying his claim for disability benefits. Doc. 1. On May 24, 2013, the Magistrate Judge issued findings and recommendations to affirm that decision. Doc. 29. On September 30, 2013, the District Court adopted the recommendations in part, but also determined that the ALJ did not adequately discuss Plaintiff's testimony that Lasix made him urinate every 60 to 90 minutes. Doc. 32; *see Varney v. Secretary of HHS*, 846 F.2d 581, 585-86 (9th Cir. 1988). The Court remanded to the ALJ to consider the frequent urination testimony.

Before the Court is Plaintiff Charles Nash's ("Plaintiff") motion for attorneys' fees and costs under the Equal Access to Justice Act (28 U.S.C. § 2412(d)) ("EAJA"). Doc. 34. Plaintiff requested $7,605.66 in fees and $72.40 in costs. The Commissioner of the Social Security Administration ("Commissioner" or "Defendant") filed a timely objection to Plaintiff's request. Doc. 36. According to the briefing schedule set by the Court, Plaintiff's deadline to reply was January 24, 2014. Doc. 35. However, Plaintiff did not file a reply until January 28, 2014. Doc. 37. The Court has nevertheless

considered this reply, which Plaintiff claims took 4.1 hours to write and augments the total fee request by $766.78 (to $8,372.44).

For the reasons that follow, the undersigned recommends that the Court **DENY** Plaintiff's application. In the alternative, the undersigned recommends an award of $3,868.67 in fees and $19.50 in costs.

**Testimony and Medical Record**

Plaintiff was born in 1951 and was 59 years old. He graduated high school, and had some college and training in welding. AR 62. He was homeless and lived in his truck for about nine months since driving from Oklahoma to California to be closer to his family. AR 67-68. He reported no issues making the long-distance drive. AR 68-69.

State agency physician J. Marks-Snelling, D.O., completed a functional capacity assessment on June 16, 2009, which noted shoulder pain and obesity. AR 362-69. The doctor opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently and could stand, walk, and sit for 6 hours in an 8-hour workday with normal breaks. AR 363.

Plaintiff sought treatment in 2010 at Golden Valley Health Center. AR 429-69. On March 30, he presented with complaints of back pain and problems urinating. AR 464. On February 10, 2011, Plaintiff returned to Dr. Heck's office for medication refills. AR 475.  Dr. Heck noted bilateral edema 2+, uncomplicated diabetes, benign hypertension, unspecified congestive heart failure, and obesity, without prescribing additional treatment. AR 475.

At the hearing, Plaintiff testified that Dr. Heck prescribed Lasix for water retention, and this made him urinate about once every 1 to 1 1/2 hours.

**ALJ Decision**

The ALJ found that Plaintiff could perform the full range of medium work. As relevant here, the written decision included the following findings (AR 25-26): "[The claimant] alleges that he cannot work due to osteoarthritis and degenerative joint disease ... He has also been told by a Dr. Hecht he has congestive heart failure and accordingly takes Lasix for water retention, making him have to urinate about once every 1 to 1 1/2 hours ... His knees bother him, especially when they have water build up. The claimant also has stated he has had edema all the time bilaterally in the lower

extremities for the past two years. ... [T]he claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He drives, goes to parks and malls to collect and recycle cans and bottles, visits his daughter in another town and uses her computer, goes to the library, reads, occasionally attends religious services, and shops for groceries." The ALJ also found it significant that after medical visits in 2009 and 2010—at which the diagnoses including unspecified heart failure, morbid obesity, hypertension, and osteoarthritis—the doctors did not identify any functional limitations.

**Plaintiff's Appeal; Magistrate's Findings and Recommendations**

On appeal, Plaintiff alleged three errors. First, the ALJ erred in rejecting his claims regarding urinary frequency. Second, the ALJ ignored the likely effects of massive obesity. Third, the ALJ at Step Two failed to account for all of Plaintiff's severe impairments. (Plaintiff also referred to Plaintiff's "advanced age" and "constellation of impairments," but did not articulate an argument in this regard.) The Magistrate Judge rejected each of these arguments. Referring to the urinary frequency claim, the Magistrate found that the ALJ properly based his rejection of this allegation on a lack of objective evidence in the medical record suggesting that Plaintiff experienced the alleged side effect.

**District Court's Order Declining to Adopt in Part**

On June 24, 2013, Plaintiff objected to the F&R. Although organized around two arguments, this document raised objections to the F&R's rejection of each of Plaintiff's three arguments in the opening brief.

The District Court adopted the F&R in part, declining to adopt the finding as to urinary frequency. The Court observed that the ALJ "noted that Plaintiff had testified that Lasix made him urinate [every] 60 to 90 minutes" but "did not discuss this symptom again." The Court analogized this to *Varney* at 585-86, in which the Ninth Circuit stated:

> The ALJ noted that Varney takes various medications and acknowledged her testimony as to their side effects. He did not, however, make any findings with regard to the side effects; he did not ask the medical expert who testified at the hearing about the side effects that could reasonably be expected from Varney's medications; he did not consider the impact of the side effects on Varney's ability to work, or include them as a limitation in his hypothetical question to the vocational expert; and he gave no reason—beyond the

3

> general finding discrediting Varney's "reports of subjective symptoms and limitations"—for disregarding Varney's testimony on this issue.
>
> Like pain, the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process. *Cf. Howard,* 782 F.2d at 1488. Also like pain, side effects can be a "highly idiosyncratic phenomenon" and a claimant's testimony as to their limiting effects should not be trivialized. *Cf. id.* Therefore, if the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s). *Cf. Cotton,* 799 F.2d at 1407; *see also Figueroa v. Secretary of Health, Education and Welfare,* 585 F.2d 551, 554 (1st Cir.1978) (ALJ must make finding on appellant's claim regarding side effects of medication). Because no such findings were made here, we remand the matter so that, as in the case of the pain testimony, the ALJ may either accept Varney's evidence regarding side effects or make specific findings rejecting such evidence.

In short, the District Court found that the ALJ's discussion of this symptom was inadequate. It noted that certain evidence mentioned by the Defendant and by the Magistrate Judge had not been considered in the ALJ's written opinion and therefore could not be considered on appeal.

## DISCUSSION

**A.     The ALJ's Rejection of Plaintiff's Testimony Was Substantially Justified**

28 U.S.C. § 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

When a claimant wins a remand based on an incorrect decision by the Commissioner (a "sentence-four" remand), attorneys' fees are to be awarded unless the Commissioner shows that she was "substantially justified" in her position. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Here, the parties do not dispute that Plaintiff is the prevailing party. The Commissioner contends, however, that the government's position was substantially justified.

The EAJA does not define "substantial justification." The Supreme Court, however, has defined it to mean "justified in substance or in the main" or "to a degree that could satisfy a

4

reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 566 (1988). "A position can be justified even though it is not correct, and we believe it can be substantially (*i.e.,* for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* The Seventh Circuit restated this standard as "whether the agency has a rational ground for thinking it has a rational ground for its action." *Kolman v. Shalala*, 39 F.3d 173, 46 (7th Cir. 1994). The Secretary must show that her conduct was reasonable at each stage of the proceedings. *Flores v. Shalala*, 49 F.3d 562, 572 (9th Cir. 1995). Finally, in deciding whether the "position of the United States" was justified, "district courts should focus on whether the government's position on the particular issue on which the claimant earned remand was substantially justified." *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010); *see Flores*, 49 F.3d at 569.

Here, the ALJ did not conform to the rule, as stated in *Varney*, that "if the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)." Nevertheless, the government's position was substantially justified. In an EAJA fee application, the issue is whether there was a "genuine dispute" underlying this position—that is, whether "reasonable people could differ as to the appropriateness of the contested action." *Pierce*, 487 U.S. at 565 (citations and brackets omitted). A reasonable person might have read the ALJ's findings as sufficiently specific. The ALJ recited Plaintiff's allegations regarding frequent urination. The ALJ also listed a variety of daily activities which "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." The ALJ specifically identified the following activities: "He drives, goes to parks and malls to collect and recycle cans and bottles, visits his daughter in another town and uses her computer, goes to the library, reads, occasionally attends religious services, and shops for groceries." The ALJ also found it significant that after medical visits in 2009 and 2010—at which the diagnoses including unspecified heart failure, morbid obesity, hypertension, and osteoarthritis—the doctors did not identify any functional limitations.

It is true that the ALJ only generally referred to "complaints of disabling symptoms and limitations." In part for this reason, the ALJ's discussion of symptoms was not "sufficiently specific"

5

and remand was appropriate. On the other hand, a reasonable person could argue that the activities that the ALJ referred to supplied the needed specificity: activities such as driving to another town, going to parks and malls to collect recyclables, or making excursions to the library, market, or house of worship may be directly probative of this issue. Likewise, while the ALJ did not refer specifically to urinary frequency when noting the absence of limitations in medical records, there was at least a "genuine dispute" as to whether this was a sufficient basis to reject that testimony. The fact that the F&R itself noted this fact ("no doctor assessed physical limitations more restrictive than the RFC for the full range of medium work") is itself probative of the question. *See Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (in assessing substantial justification, "the district court could consider the magistrate judge's decision," which was favorable to the government, because, as the Supreme Court stated in Pierce, "a string of successes" can be indicative of the government's reasonableness).

**B.    Alternative Argument: Plaintiff's Request Must Be Modified**

Should the Court instead determine that the Commissioner's position was not substantially justified, the undersigned will provide an assessment as to what constitutes a reasonable award of attorneys' fees. *See* 28 U.S.C. § 2412(d)(2)(A); *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1992) (district court has an independent duty to review Plaintiff's fee request to determine its reasonableness).

**1.    Legal Standard**

Under the EAJA, attorneys' fees must be reasonable. 28 U.S.C. § 2412(d)(1)(A); *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002). The applicant bears the burden of demonstrating the reasonableness of the request. *Blum v. Stenson,* 465 U.S. 886, 897 (1984). A fee applicant is expected to exercise "billing judgment," and that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983) (emphasis in original); *see INS v. Jean*, 496 U.S. 154, 161 (1990); *Atkins v. Apfel*, 154 F.3d 986, 988 (9th Cir. 1998) (applying *Hensley* in EAJA adjudication).

The Ninth Circuit has held that the lodestar method should be used to determine what constitutes a reasonable fee under the EAJA. *See Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d

6

1132, 1135 (9th Cir. 2012). To calculate the lodestar amount, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. The request should exclude hours that are excessive, redundant, or otherwise unnecessary. *Id*.

**2.     Hourly Rates**

The EAJA provides that fee awards should be "based upon prevailing market rates for the kind and quality of the services furnished," and that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Although the cost-of-living increase can be calculated, the Ninth Circuit maintains a list of the maximum hourly rates for each year. *See Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005); http://www.ca9.uscourts.gov.

Here, Plaintiff requests the rates of $184.32 per hour for work performed in 2012, and $186.55 for work performed in the first half of 2013. These rates are less than or equal to the maximum rates identified by the Ninth Circuit. The Court finds the Plaintiff's request for a cost of living adjustment to be reasonable in light of the kind and quality of services furnished, as well as the lack of argument suggesting otherwise by Defendant.

**3.     Number of Hours**

Plaintiff's total (revised) claim is for $8,372.44. This represents 26.6 hours at the 2012 rate and 18.2 hours at the 2013 rate.

In the past, Plaintiff's attorney has filed a number of EAJA fee requests in Social Security cases. These requests display two trends. First, they have failed to heed EAJA caselaw, and they have done so despite progressively urgent reminders from this Court. *See, e.g., Reyna v. Astrue*, 2011 WL 6100609 (E.D.Cal. Dec.6, 2011); *Fontana v. Astrue,* 2011 WL 2946179 (E.D.Cal. July 21, 20011); *Stairs v. Astrue,* 2011 WL 2946177 (E.D.Cal. July 21, 2011); *VonBerckefeldt v. Astrue,* 2011 WL 2746290 (E.D.Cal. July 14, 2011); *Roberts v. Astrue,* 2011 WL 2746715 (E.D.Cal. July 13, 2011); *Lopez v. Astrue*, 1:10CV1012 AWI GSA, 2012 WL 2052146 (E.D. Cal. June 6, 2012) ("repeated rulings on Plaintiff's attorneys petitions have revealed the similar nature of their EAJA petitions and billing statements"); *Cathey v. Comm'r of Soc. Sec.*, 1:10-CV-01562-LJO, 2013 WL

1694950 (E.D. Cal. Apr. 18, 2013) (reducing fee award, citing attorney's repeated failures to modify fee request).

The present fee request continues the trend. For example, citing "repeated rulings" regarding EAJA fee documentation, the court in *Cathey* reduced a request of 1.8 hours to 0.5 hours for fee documentation; Plaintiff now requests 1.5 hours. Also, the court in *Cathey* entirely disallowed Plaintiff's request for time "reviewing" various ECF filings and minor correspondence, of which "[a] majority are single-page documents or standard forms which a practitioner such as Ms. Bosavanh, who is familiar with Social Security appeals in this Court, should require 'no more than two to three minutes' to review." Yet these same items are requested again here, in the same way. Also, the *Cathey* court specifically rejected a request labeled "Review documents to serve three govt defendants," noting that Ms. Bosavanh had been previously admonished that "this clerical work is not typically compensable under the EAJA." *Brumley*, 2013 WL 100249 at *4. Yet Plaintiff makes a similar request here.

Each of these examples, taken individually, is a minor contribution to the EAJA request. Taken together, however, they add up to a significant amount of time. More importantly, they underscore that the numbers were not submitted in an effort to demonstrate the reasonableness of the time worked and to exercise "billing judgment." As mentioned below, Plaintiff has defended a different filing on the grounds that "Social Security proceedings are inquisitorial, not adversarial." Reply Brief at 7. But this is not true at the District Court level. When Plaintiff files documents with the expectation that they will be adjudicated under the same inquisitorial standard that applies in administrative proceedings, Plaintiff falls short of his legal burden and the guidance of judges in this district. For a similar practice, *see Haltom v. Astrue*, 1:11-cv-01439-LJO-SMS, Doc. 24 (Order Discharging Order to Show Cause—noting Ms. Bosavanh's written claim that she relied on the U.S. Attorney to identify errors in venue).

Accordingly, the undersigned recommends as follows.

<u>Contact with Client</u>

In the past, courts in this district have criticized Ms. Bosavanh's manner of recording client telephone calls. In these cases, the primary issue was the lack of specificity in the EAJA entry. *See*

*Cox v. Astrue*, CIV S-05-1384 GEB, 2012 WL 1901299 (E.D. Cal. May 24, 2012); *Kimzey v. Comm'r of Soc. Sec.*, 1:09-CV-01808 JLT, 2011 WL 5101941 (E.D. Cal. Oct. 25, 2011). Here, the requests are somewhat more specific:

> 04/18/12 Teleconference with client re: appeal 0.3
> 04/17/12 Telephone call from client about process 0.2
> 05/31/12 Teleconference with client re: status of case 0.3
> 07/28/12 Telephone call from client re: status/update of case 0.2
> 04/01/13 Telephone call from client requesting status of case 0.3
> 05/20/13 Telephone call from client wanting status of case and timeline 0.2
> 05/24/13 Telephone conference with client re: status of case 0.2
> 09/30/13 Contact client re: case outcome 0.3
>
> TOTAL: 2 hours (eight phone calls)

However, the Court notes that some of these calls are not recoverable either because they are of a clerical nature—e.g., "contact client re: case outcome"—or because they are superfluous for other reasons—e.g., four calls regarding the "status of case."

The Court is not in a position to determine the content of the calls, or to determine which of the calls is allowable under the EAJA. However, these phone calls are excessive, and for this reason the absence of additional support makes the work difficult to justify. Three calls (for 0.8 hours) occurred before the filing of the Second Amended Complaint. The next three calls occurred prior to the issuance of the F&R and consisted of status updates (0.7 hours total). Two additional calls were made after the F&R and the District Court's order on these (0.5 hours). While these last calls may have been necessary, the Court questions their duration in light of the failure to exercise billing judgment regarding the other calls.

In light of the concerns expressed above regarding the failure of this EAJA attempt to limit itself to reasonable amounts, a total of 0.2 hours will be allotted, i.e. a reduction of one hour in 2012 ($184.32 x 1.0) and 0.8 hours in 2013 ($186.55 x 0.8), or a total reduction of $333.47.

Drafting Complaint

In a number of cases, this Court has rejected complaints filed by Ms. Bosavanh and required to file an amended complaint.[1] In his reply brief, Plaintiff asserts that this rejection was not

---
[1] The other cases are: 1:12-cv-00411-AWI-SMS (Rangel v. Commissioner of Social Security); 1:12-cv-00657-LJO-SMS (Chavez v. Commissioner of Social Security); 1:12-cv-00470-LJO-SMS (Carla Morgan v. Commissioner of Social Security).

9

necessary. He argues that the language of the Social Security statute, 42 U.S.C. § 405(g), exempts Social Security cases from the pleading standards applicable under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). There is no basis for this claim. Plaintiff also asserts that "Social Security proceedings are inquisitorial, not adversarial," but this is not correct at the District Court level. Likewise, Plaintiff refers to other features of review which are only applicable at the Appeals Council stage. The Court has set forth additional discussion elsewhere of the inadequacies of the complaint originally filed in this case. *See Haltom v. Astrue*, 1:11-cv-01439-LJO-SMS, Doc. 24 (Order Discharging Order to Show Cause).

In this case, the complaint and first amended complaint were dismissed; only the second amended complaint was accepted. Ms. Bosavanh makes the following requests related to preparation of the complaint:

> 03/09/12 Review AC denial and ALJ Decision to assess merits of federal court Appeal 1.0
> 04/30/12 Review drafted complaint and related documents; E-file federal court complaint, and email to judge 0.5
> 05/02/12 Review court order dismissing complaint for failure to state a claim 0.2
> 05/31/12 Prepare motion for 14-day extension of time to submit amended complaint 0.2
> 06/01/12 Review order granting motion for extension of time 0.1
> 06/14/12 Review case file, and draft first amended complaint 3.0
> 06/20/12 Review order dismissing first amended complaint with leave to amend 0.2
> 06/28/12 Review file and draft second amended complaint 3.3
>
> TOTAL: 8.5 hours

The Court has reviewed the Second Amended Complaint. It is a five-page document; however, three pages consist of boilerplate material. The remaining two pages consist of a summary of the facts which would entitle Plaintiff to an appeal. This is exactly the sort of information that a practitioner would have been articulating when deciding on the merits of a court appeal, i.e. the activity in which Ms. Bosavanh engaged for 1.0 hours on 03/09/2012. Once the basis for appeal has been identified, the act of recording this basis in the complaint should be a *de minimis* exercise, certainly not requiring more time than the original review; the Court allots an additional half-hour.

1    The remaining costs represent efforts to modify the boilerplate in her complaint which would
2 be used in multiple Social Security appeals. Because an experienced Social Security attorney would
3 not have filed the prior two unsatisfactory complaints, the Court disallows these costs.

4    Thus, the Court allows 1.5 hours in 2012. This is achieved by subtracting 7 hours in 2012
5 ($184.32 x 7.0) for a total of $1,290.24.

6    Reviewing Minor Documents

7    Plaintiff requests time for "reviewing" various ECF filings and minor correspondence. A
8 majority are single-page documents or standard forms which a practitioner such as Ms. Bosavanh,
9 who is familiar with Social Security appeals in this Court, should require "no more than two to three
10 minutes" to review. *Green v. Astrue,* 2012 U.S. Dist. LEXIS 51768, at *8, 2012 WL 1232300 (E.D.
11 Cal. Apr. 12, 2012).

> 04/18/12 Review documents to client re: fed ct process, fees, etc. 0.3
> 04/30/12 Review documents signed by client for filing 0.2
> 04/30/12 Receive and review docket notice for accurate filing 0.1
> 05/01/12 Review court notice re: IFP 0.1
> 07/05/12 Review order authorizing service of complaint by Magistrate Snyder 0.1
> 07/05/12 Receive and review court documents, summons, and related documents 0.4
> 07/06/12 Review documents to be served on 3 government officers; review proof of service and decline consent to Magistrate 0.4
> 07/09/12 Review clerk's notice re: judge assignment and new case number 0.1
> 07/10/12 Review consent to magistrate by OGC attorney 0.1
> 07/11/12 Review certified mail receipt from US Attorney's office; give to staff 0.1
> 07/24/12 Review consent to magistrate judge by COSS; give to staff 0.1
> 07/26/12 Receive and review return receipt from Attorney General; give to staff to file 0.1
> 11/05/12 Receive and review court notice of lodging administrative transcript 0.1
> 11/06/12 Receive and review court notice of acknowledgment of transcript 0.1
> 12/04/12 Review and annotate transcript in preparation for confidential brief 5.9
> 12/20/12 Review designation of counsel for service from COSS 0.1
> 01/08/13 Review certificate of service by COSS 0.1
> 01/14/13 Review response to cb from OGC attorney, dated 1/8/13 0.2
> 02/28/13 Receive request, consent, and review stipulation and proposed order for extension of briefing schedule by OGC attorney 0.3
> 03/01/13 Review order granting defendant's request for extension 0.1
> 04/08/13 Receive request, consent to extension request from OGC attorney 0.2
> 04/09/13 Review stipulation and order granting extension request 0.2
>
> TOTAL: 9.3 hours = $1,716.63 (8.2 x $184.32 in 2012, 1.1 x $186.55 in 2013)

In *Cathey*, the Magistrate Judge faced with similar entries made the following observation:

> The Court finds many of these entries excessive. This is not the first case in which "Ms. Bosavanh reports excessive time to review a number of documents routinely filed in Social Security actions." *Brumley*, 2013 WL 100249 at *4. An experienced practitioner should not take six minutes to review a notice of lodging transcript, an acknowledgment of receipt of transcript, or certified mail receipts.

*Cathey*, 2013 WL 1694950 at *8.

Despite this admonition, Ms. Bosavanh has again requested six minutes to review a notice of lodging transcript, six minutes to review an "acknowledgement of transcript," and six minutes (twice) to review certified mail receipts.

In short, Plaintiff's attorney has abdicated her obligation to exercise "billing judgment" by submitting an EAJA request that sends a clear message that it was put together without regard for EAJA caselaw or for this Court's direct guidance. Characterizing this proceeding as "inquisitorial, not adversarial," she asks the Court to do her job of filtering out unreasonable entries. But District Court proceedings are in fact adversarial, and the Court therefore considers these entries with great skepticism, both in terms of the propriety of each entry as well as the amount of time required.

Considering the presence of some entries which should not be included and others which are excessively lengthy, the Court will allow a single minute for each of these 22 entries, totaling $67.81 (16 in 2012 = $49.15, 6 in 2013 = $18.66). Subtracted from the $1,716.63 that Plaintiff has requested, this amounts to a reduction of $1,648.82.

<u>Work Related To, But Not Attributed To, Objections To F&R</u>

On April 18, 2013, Defendant filed her opposition brief. Doc. 28. Plaintiff then recorded the following work:

> 04/18/13 Review opposition brief from OGC Attorney (21 pages); annotate 1.5

However, Plaintiff did not file a reply brief. On May 24, 2013, the undersigned issued the F&R in this case. Plaintiff then recorded the following work related to objecting to these F&Rs:

> 05/24/13 Review findings and recommendations (12 pages) 1.0
> 06/24/13 Review all documents and draft objections 3.9

12

On June 24, 2013, Plaintiff filed these objections. On July 2, 2013, Defendant responded. Pursuant to Local Rule 304, no further briefing was permitted. Nevertheless, Plaintiff then recorded the following work:

07/02/13 Review response to objections by COSS 1.0

The four entries listed above arise at three different points in the litigation, yet they represent the same legal analysis: namely, weighing the arguments raised by Defendant in her opposition brief. While it did prove necessary for Plaintiff to object to the F&R, this Court essentially agreed with Defendant's arguments in its F&R, and Plaintiff's objections largely reiterated the original arguments from the complaint; Defendant then reiterated its own arguments in its response to Plaintiff's objections to the F&R. Thus, in evaluating the proper amount of time spent in drafting objections to the F&R, the Court considers the one hour previously spent in reviewing Defendant's opposition brief (even though Plaintiff did not ultimately draft a reply brief). And in evaluating Plaintiff's "review" of Defendant's response to the objections, the Court considers all this prior work.

Furthermore, Plaintiff had previously worked a total of 11.6 hours between drafting the confidential brief and the opening brief (on December 5, 2012 and on February 7, 2013). Plaintiff's objections to the F&R recapitulated many of these arguments. Two full pages of these objections (relating to the "Step Two" error) essentially repeat the opening brief verbatim—even failing to alter them where the F&R pointed out pervasive inaccuracies (e.g., "Dr. Jennings did not note any psychological impressions" (F&R at 4 (citing Tr. 346), 11). And of the one-and-a-half pages relating to the urination issue, Plaintiff repeats several of the arguments in the opening brief. Defendant's response was four pages and largely repetitive, yet Plaintiff claimed a full hour to read this.

In light of these problems, the Court should permit the time that Plaintiff has directly attributed to reviewing and objecting to the F&R. However, as to the entries for reviewing Defendant's opposition brief and response brief, Plaintiff has not shown why this time was reasonable. The undersigned recommends disallowing 2.5 hours x 186.55, or $466.38.

EAJA Activities

Time spent in establishing the entitlement to and amount of the fee is compensable. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008). *Cf. Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998) (fee award apportioned to stages of case in which government lacked substantial justification). Plaintiff has requested the following:

> 12/23/13 Prepare EAJA time sheet and EAJA fee documents 1.5
> [undated] EAJA Reply 4.1
>
> TOTAL: 6.1 hours

Given Plaintiff's failure to address or acknowledge repeated criticisms of EAJA fee applications, the undersigned finds that compensation for any timesheet activity is inappropriate. The Court also does not find that 4.1 hours is reasonable for the reply brief. This document, consisting of seven substantive pages and filed four days after the Court's deadline, consists largely of boilerplate and material from prior filings in this case. Considering the complexity of the issues and the substance of the reply brief, the Court will allow 1.5 hours for this task. This amounts to a disallowance of 4.1 hour x $186.55 in 2013, totaling $764.86.

**4.     Total Fee Award and Payee**

As stated above, Plaintiff's total claim is for $8,372.44. The Court reduces this amount by $4,503.77, consisting of: $333.47 (contact with client), $1,290.24 (drafting the complaint), $1,648.82 (reviewing minor documents), $466.38 (work unrelated to objections to F&R), and $764.86 (EAJA Activities). The net amount allowed is thus $3,868.67.

This amount should be awarded to Plaintiff, the prevailing litigant, subject to offset for applicable government debts. *Astrue v. Ratliff,* 130 S.Ct. 2521, 2522 (2010).

**5.     Costs**

Plaintiff seeks $72.40 for costs incurred during the action. This consists of $48.90 associated with a "489-page transcript" (otherwise unexplained); $4.00 to "download" 40 pages of briefs; and $19.50 in certified mail.

As Defendant notes, the first two requests are vague. To the extent that they represent download costs, they are not permissible: The ECF docketing system allows the parties, through

14

counsel, to access and download court documents for free.[2] Because of the lack of sufficient explanation or documentation, these expenses are disallowed.

The certified mail receipt is a different story. Certainly, a copy of the receipt would only strengthen this request. However, the Court accepts that Plaintiff incurred these costs. The EAJA fee request mentions two such mailings.

Plaintiff's request for costs is reduced by $52.90. The Court will award $19.50.

## CONCLUSION

Based on the foregoing, the undersigned **HEREBY RECOMMENDS** that Plaintiff's request be denied. In the alternative, the undersigned recommends granting $3,868.67 in fees and $19.50 in costs.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 of the United States Code section 636(b)(1).  Within fifteen **(15)** days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated:   **February 19, 2014**          **/s/ Sandra M. Snyder**
                                         UNITED STATES MAGISTRATE JUDGE

---

[2] "Parties in a case (including pro se litigants) and attorneys of record receive one free electronic copy, via the notice of electronic filing or notice of docket activity, of all documents filed electronically, if receipt is required by law or directed by the filer." Electronic Public Access Fee Schedule, ¶ 8 (available at http://www.pacer.gov/documents/epa_feesched.pdf).